UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION


UNITED STATES OF AMERICA,

              Plaintiff,

vs.

MISCELLANEOUS COLLECTIBLE
COINS AND MEDALS SEIZED IN
JANUARY 2012 FROM REAL PROPERTY LOCATED
ON LAKESHORE STREET, WEST BLOOMFIELD,
MICHIGAN; TWO THOUSAND NINE HUNDRED EIGHTY-ONE
DOLLARS ($2,981.00) IN U.S. CURRENCY;
ASSORTED COLLECTIBLE COINS AND
ASSORTED COLLECTIBLE CURRENCY FROM
PNC BANK SAFE DEPOSIT BOX #7062700003; ASSORTED
COLLECTIBLE COINS FROM PNC SAFE
DEPOSIT BOX #91; ASSORTED COLLECTIBLE
COINS FROM PNC BANK SAFE DEPOSIT BOX #102;
ASSORTED COLLECTIBLE COINS FROM PNC BANK
SAFE DEPOSIT BOX #110; ASSORTED
COLLECTIBLE COINS AND ASSORTED
METAL ITEMS FROM PNC BANK SAFE DEPOSIT
BOX #377001664; ASSORTED COLLECTIBLE
COINS, ASSORTED COLLECTIBLE CURRENCY
AND OTHER MISCELLANEOUS COLLECTIBLE
ITEMS FROM PNC BANK SAFE DEPOSIT BOX #173;
ASSORTED COLLECTIBLE COINS FROM PNC BANK
SAFE DEPOSIT BOX #377003256; ASSORTED
COLLECTIBLE COINS FROM PNC BANK SAFE DEPOSIT
BOX #503; ASSORTED COLLECTIBLE COINS,
ASSORTED COLLECTIBLE CURRENCY AND OTHER
MISCELLANEOUS COLLECTIBLES FROM PNC BANK
SAFE DEPOSIT BOX #519; ASSORTED
COIN COLLECTION AND MISCELLANEOUS

Civil No.   2:15-cv-

Honorable
Magistrate Judge

**<u>DEMAND FOR JURY TRIAL</u>**

SAVINGS BONDS FROM FIFTH THIRD BANK SAFE
DEPOSIT BOX #148; ASSORTED COIN
COLLECTION AND MISCELLANEOUS
JEWELRY FROM FIFTH THIRD BANK SAFE
DEPOSIT BOX #149; ASSORTED COIN COLLECTION
AND ASSORTED COLLECTIBLE CURRENCY FROM
FIFTH THIRD BANK SAFE DEPOSIT BOX #307; ASSORTED COIN
COLLECTION FROM FIFTH THIRD BANK SAFE
DEPOSIT BOX #308; ASSORTED COIN COLLECTION
FROM FIFTH THIRD BANK SAFE DEPOSIT BOX #309;
ASSORTED COIN COLLECTION AND
ASSORTED COLLECTIBLE CURRENCY FROM
FIFTH THIRD BANK SAFE DEPOSIT BOX #310;
ASSORTED COIN COLLECTION AND OTHER
MISCELLANEOUS COLLECTIBLE ITEMS FROM
FIFTH THIRD BANK SAFE DEPOSIT BOX #311;
SIX (6) BOXES OF ASSORTED COLLECTIBLE
COINS, ASSORTED COLLECTIBLE CURRENCY
AND ASSORTED SILVER BARS SEIZED IN MAY 2014,
FROM REAL PROPERTY LOCATED ON LAKESHORE
STREET, WEST BLOOMFIELD, MICHIGAN;
MERRILL LYNCH ACCOUNT NO. XXX-X5635 VALUED
AT $228,457.34; MERRILL LYNCH ACCOUNT NO. XXX-X8161;
VALUED AT $219,558.91; MERRILL LYNCH ACCOUNT
NO. XXX-X7984 VALUED AT $1,305,841.18;
ONE HUNDRED TWELVE THOUSAND SIX HUNDRED
NINETY-TWO DOLLARS AND SEVENTY-FIVE CENTS
($112,692.75) FROM FIFTH THIRD BANK ACCOUNT
NO. XXXXXX3413; THIRTY-THREE THOUSAND SEVENTY-TWO
DOLLARS AND EIGHTY-SEVEN CENTS
($33,072.87) FROM FIFTH THIRD BANK ACCOUNT
NO. XXXXXX9169; EIGHTEEN THOUSAND NINE HUNDRED
FORTY-EIGHT DOLLARS AND NINETY-TWO CENTS
($18,948.92) IN U.S. CURRENCY FROM FIFTH THIRD
BANK ACCOUNT NO. XXXXXX2593; THIRTY THOUSAND FOUR
HUNDRED FOURTEEN DOLLARS AND FIFTEEN CENTS
($30,414.15) IN U.S. CURRENCY FROM FIFTH THIRD BANK
ACCOUNT NO. XXXXXX5381; THREE HUNDRED
TWENTY-EIGHT THOUSAND NINE HUNDRED
SEVENTY-FIVE DOLLARS AND TWENTY-TWO CENTS

($328,975.22) IN U.S. CURRENCY FROM FIFTH THIRD
BANK ACCOUNT NO. XXXXXX7731; AND, SIX HUNDRED
TWENTY-TWO THOUSAND EIGHT HUNDRED DOLLARS
AND EIGHTEEN CENTS ($622,800.18) IN U.S. CURRENCY
FROM PROCEEDS OF SALE OF REAL PROPERTY LOCATED
ON LAKESHORE STREET, WEST BLOOMFIELD, MICHIGAN

Defendants *in Rem*.
_____/

## **COMPLAINT FOR FORFEITURE**

NOW COMES Plaintiff, the United States of America, by and through

BARBARA L. McQUADE, United States Attorney for the Eastern District of

Michigan, and JONATHAN J.C. GREY, Assistant United States Attorney, and

states upon information and belief in support of this Complaint for Forfeiture *in rem*

that:

## **JURISDICTION AND VENUE**

1.      This is an *in rem* civil forfeiture action brought by the United States of

America pursuant to 21 U.S.C. § 881(a)(6), 18 U.S.C. §§ 981 (a)(1)(A) and/or

981(a)(1)(C), resulting from violations of 21 U.S.C. §§ 841(a)(1) and 846, and 18

U.S.C. § 1347, 1349 and/or 1956.

2.      This Court has subject matter jurisdiction over this proceeding

pursuant to:

a.      28 U.S.C. § 1345, because this action is being commenced by

the United States of America as Plaintiff; and

b.  28 U.S.C. § 1355(a), because this is an action for forfeiture.

3.  This Court has *in rem* jurisdiction over this forfeiture action pursuant to:

a.  28 U.S.C. § 1355(b)(1)(A), because pertinent acts or omissions giving rise to the forfeiture occurred in the Eastern District of Michigan; and

b.  28 U.S.C. § 1355(b)(1)(B), because venue properly lies in the Eastern District of Michigan pursuant to 28 U.S.C. § 1395.

4.  Venue is proper in the District Court for the Eastern District of Michigan, pursuant to 28 U.S.C. § 1355(b)(1), because the acts or omissions giving rise to the forfeiture occurred in this district.

## DEFENDANTS *IN REM*

5.  The defendant property consists of the following property:

a.  A collection of various miscellaneous coins and medals, which was seized from 6550 Lakeshore Street, West Bloomfield, Michigan, on or about January 26, 2012;

b.  Two Thousand Nine Hundred Eighty-One Dollars ($2,981.00) in U.S. Currency which was seized from 5889 Bay Road, Suite 104, Saginaw, Michigan, on or about January 26, 2012;

c.  Assorted Collectible Coins and Assorted Collectible Currency

4

seized on or about May 6, 2014, from PNC Bank Safe Deposit Box #7062700003;

d.    Assorted Collectible Coins seized on or about May 6, 2014, from PNC Bank Safe Deposit Box #91;

e.    Assorted Collectible Coins seized on or about May 6, 2014, from PNC Bank Safe Deposit Box #102;

f.    Assorted Collectible Coins seized on or about May 6, 2014, from PNC Bank Safe Deposit Box #110;

g.    Assorted Collectible Coins and Assorted Metal Items seized on or about May 6, 2014, from PNC Bank Safe Deposit Box #377001664;

h.    Assorted Collectible Coins, Assorted Collectible Currency and Assorted Collectible Baseball Cards seized on or about May 6, 2014, from PNC Bank Safe Deposit Box #173;

i.    Assorted Collectible Coins seized on or about May 6, 2014, from PNC Bank Safe Deposit Box #377003256;

j.    Assorted Collectible Coins seized on or about May 6, 2014, from PNC Bank Safe Deposit Box #503;

k.    Assorted Collectible Coins, Assorted Collectible Currency and

other Miscellaneous Collectibles seized on or about May 6, 2014, from PNC Bank Safe Deposit Box #519;

l.      Assorted Coin Collection and Miscellaneous Savings Bonds seized on or about May 6, 2014, from Fifth Third Bank Safe Deposit Box #148;

m.     Assorted Coin Collection and Miscellaneous Jewelry seized on or about May 6, 2014, from Fifth Third Bank Safe Deposit Box #149;

n.      Assorted Coin Collection and Assorted Collectible Currency seized on or about May 6, 2014, from Fifth Third Bank Safe Deposit Box #307;

o.      Assorted Coin Collection seized on or about May 6, 2014, from Fifth Third Bank Safe Deposit Box #308;

p.      Assorted Coin Collection seized on or about May 6, 2014, from Fifth Third Bank Safe Deposit Box #309;

q.      Assorted Coin Collection and Assorted Collectible Currency seized on or about May 6, 2014, from Fifth Third Bank Safe Deposit Box #310;

r.      Assorted Coin Collection, Miscellaneous Sports Cards and

6

Miscellaneous Stamps seized on or about May 6, 2014, from Fifth Third Bank Safe Deposit Box #311;

s.    Six (6) Boxes of Assorted Collectible Coins, Assorted Collectible Currency and Assorted Silver Bars, seized from real property located at Lakeshore Street, West Bloomfield, Michigan, on or about May 6, 2014;

t.    Merrill Lynch Investment Account #XXX-X5635 Valued at $228,457.34, held in the name of Gavin I. Awerbuch, M.D. The account was frozen on or about May 6, 2014;

u.    Merrill Lynch Investment Account #XXX-X8161 Valued at $219,558.91, held in the name of Gavin Awerbuch.   The account was frozen on or about May 6, 2014;

v.    Merrill Lynch Investment Account #XXX-X7984 Valued at $1,305,841.18, held in the name of Gavin Awerbuch.   The account was frozen on or about May 6, 2014;

w.    $112,692.75 in U.S. Currency from Fifth Third Bank Account #XXXXXX3413, held in the name of Gavin Awerbuch, M.D., which was seized on or about May 6, 2014;

x.    $33,072.87 in U.S. Currency from Fifth Third Bank Account

7

#XXXXXX9169, held in the name of Gavin Awerbuch, M.D., PLLC, which was seized on or about May 6, 2014;

y.   $18,948.92 in U.S. Currency from Fifth Third Bank Account #XXXXXX2593, held in the name of A Plus Medical Supply, LLC, which was seized on or about May 6, 2014;

z.   $30,414.15 in U.S. Currency from Fifth Third Bank Account #XXXXXX5381, held in the name of Gavin Awerbuck and Jerome B. Awerbuch, which was seized on or about May 6, 2014;

aa.   $328,975.22 in U.S. Currency from Fifth Third Bank Account #XXXXXX7731, held in the name of Gavin Awerbuch, M.D., PLLC, which was seized on or about May 6, 2014;

bb.   $622,800.18 in U.S. Currency from Seaver Title Agency LLC Check No. 58434, representing funds seized on or about July 1, 2014, as proceeds from the sale of real property located at 6550 Lakeshore Street, West Bloomfield, Michigan.

(The defendants *in rem* shall hereafter be collectively referred to as the "Defendant Property").

6.   The defendants *in rem*, or Defendant Property, identified in Paragraph

8

5 a. through 5 cc. above were seized pursuant to federal search and seizure warrants executed on or about January 26, 2012 and May 6, 2014, based upon an investigation by members of the United States Department of Health and Human Services (HHS), Office of the Inspector General (OIG), Office of Investigations (OI); the United States Drug Enforcement Administration (DEA); the Federal Bureau of Investigation (FBI); and, the Internal Revenue Service (IRS).

### STATUTORY BASIS FOR CIVIL FORFEITURE

7.     United States Code, Section 881, governs the civil forfeiture of property which constitutes or is derived from the proceeds of narcotics crimes, or which was used to facilitate narcotics crimes:

> The following shall be subject to forfeiture to the United States and no property right shall exist in them....[a]ll moneys, negotiable instruments, securities, or other things of value furnished or intended to be furnished by any person in exchange for a controlled substance or listed chemical in violation of this subchapter, all proceeds traceable to such an exchange, and all moneys, negotiable instruments, and securities used or intended to be used to facilitate any violation of this subchapter.
> 21 U.S.C. § 881(a)(6).

8.  Title 18 United States Code, Section 1956, prohibits the laundering of monetary instruments:

> Whoever, knowing that the property involved in a financial transaction represents the proceeds of some form of unlawful activity, conducts or attempts to conduct such a financial transaction which in fact involves the proceeds of specified

unlawful activity–
>    (A)(i) with the intent to promote the carrying on of specified
>    unlawful activity; or
>    (ii) with intent to engage in conduct constituting a violation of
>    section 7201 or 7206 of the Internal Revenue Code of 1986; or
>    (B) knowing that the transaction is designed in whole or in
>    part-
>    (i) to conceal or disguise the nature, the location, the source,
>    the ownership, or the control of the proceeds of specified
>    unlawful activity; or
>    (ii) to avoid a transaction reporting requirement under State or
>    Federal law, shall be sentenced to a fine of not more than
>    $500,000 or twice the value of the property involved in the
>    transaction, whichever is greater…

18 U.S.C. § 1956(a)(1).

9.  Similarly, Title 18, United States Code, Section 1957, provides, in part:

> (a) Whoever, in any of the circumstances set forth in subsection
> (d), knowingly engages or attempts to engage in a monetary transaction
> in criminally derived property of a value greater than $ 10,000
> and is derived from specified unlawful activity, shall be punished as
> provided in subsection (b).
>                                          ***
>
> (f) As used in this section--
> (1) the term "monetary transaction" means the deposit, withdrawal,
> transfer, or exchange, in or affecting interstate or foreign commerce,
> of funds or a monetary instrument (as defined in section 1956(c)(5)
> of this title) by, through, or to a financial institution (as defined in
> section 1956 of this title), including any transaction that would be a
> financial transaction under section 1956(c)(4)(B) of this title, but such
> term does not include any transaction necessary to preserve a person's
> right to representation as guaranteed by the sixth amendment to the
> Constitution;
> (2) the term "criminally derived property" means any property
> constituting, or derived from, proceeds obtained from a criminal

10

offense; and

(3) the terms "specified unlawful activity" and "proceeds" shall have the meaning given those terms in section 1956 of this title.

18 U.S.C. § 1957(a) and (f).

10.     The Defendant Property is subject to forfeiture pursuant to 21 U.S.C. § 881(a)(6), 18 U.S.C. §§ 981 (a)(1)(A) and/or 981(a)(1)(C), because it constitutes or is property derived from the proceeds of narcotics crimes in violation of 21 U.S.C. §§ 841, 846 and/or health care fraud in violation of 18 U.S.C. § 1347, 1349, a specified unlawful activity as defined by 18 U.S.C. § 1956(c)(7) .   The Defendant Property is also subject to forfeiture pursuant to 18 U.S.C. § 981(a)(1)(A) because it is property involved in money laundering transactions in violation of 18 U.S.C. §§ 1956(a)(1)(A)(i) and (B)(i) and 1957.

## COMPANION CASES

11.     This civil forfeiture action arises out of many of the same occurrences or transactions associated with United States vs. Dr. Gavin Ira Awerbuch, Criminal Complaint No. 11-mj-30216.   Additionally, this civil forfeiture action is related to the separate civil forfeiture action U.S. vs. Real Property Located at 6320 East Red Range Way, Cave Creek, Maricopa County, Arizona, et al., Civil Case No. 14-cv-12045 (Honorable Thomas L. Ludington).

## <u>FACTUAL BASIS IN SUPPORT OF FORFEITURE</u>

12.     There is evidence that the Defendant Currency is forfeitable to the
United States of America pursuant to 18 U.S.C. §§ 981(a)(1)(A) and/or
981(a)(1)(C) and 21 U.S.C. § 881(a)(6).   Evidence supporting this determination
includes, but is not limited to, the following:

    a.    Gavin Awerbuch ("AWERBUCH") has been licensed as a medical
doctor since on or about September 23, 1987.   AWERBUCH
specializes in neurology.

    b.    AWERBUCH incorporated Gavin Awerbuch, M.D. PLLC, in the State
of Michigan, on or about May 14, 2008.

    c.    AWERBUCH was certified as a Medicare provider on or about
September 23, 1987. AWERBUCH's business, Gavin Awerbuch, M.D.
PLLC, operates at 5889 Bay Road, Suite 104, Saginaw, MI 48604, in
the Eastern District of Michigan.

    d.    On May 2, 2014, a Criminal Complaint in the United States District
Court for the Eastern District of Michigan was filed against
AWERBUCH, Criminal Case No. 2:14-mj-30216, alleging offenses of
healthcare fraud and distribution of controlled substances. Search and
seizure warrants have been issued and executed in this matter.

e.   Investigation revealed that between January 2009 and January 2014, AWERBUCH submitted approximately 42,780 claims to Medicare for 2,437 Medicare beneficiaries totaling approximately $31,521,413.91, of which Medicare paid approximately $9,816,532.39.

f.   Medicare is the federal health insurance program for the aged and disabled established by Congress in 1965.   Medicare Part B covers certain doctors' services, outpatient care, medical supplies, and preventive services.   Medicare Part D involves prescription drug coverage.

g.   Subsys is proprietary sublingual fentanyl spray for breakthrough cancer pain, or BTCP, in opioid-tolerant patients.   Subsys is a delivery mechanism for liquid fentanyl formulations.   Fentanyl is a Schedule II controlled substance.

h.   Due to the risk for misuse, abuse, addiction and overdose, the Food and Drug Administration (FDA) provides that Subsys is only available through a program called Risk Evaluation and Mitigation Strategy (REMS) under the Trans mucosal Immediate-Release Fentanyl (TIRF).

i.   Prescribers that wish to prescribe TIRF medications must sign documents stating, among other things, that they understand that "TIRF

medicines are indicated only for the management of breakthrough pain

in patients with cancer, who are already receiving and who are tolerant

to around-the-clock therapy for their underlying persistent pain."

j.   Medicare Part D has paid approximately $6,969,100 for dates of

service of January 1, 2009 through February 6, 2014, for Subsys

prescribed by AWERBUCH.   AWERBUCH wrote approximately

1,283 prescriptions for Subsys for Medicare beneficiaries during this

time period making AWERBUCH the top prescriber of Subsys for

Medicare beneficiaries nationwide during this time. This is more than

six times the number of Subsys prescriptions for Medicare

beneficiaries written by his closest competitor, who wrote

approximately 203 such prescriptions.

k.   AWERBUCH is a prolific biller of two categories of diagnostic tests,

referred to as nerve conduction studies (NCS), and needle

electromyographies (EMGs).   Broadly speaking, these diagnostic tests

are used to detect damage to nerves and muscles, and to help pinpoint

the causes of such damage.   A nerve conduction study measures how

quickly electrical impulses move along a nerve. Nerve conductions

studies typically take from 15 minutes to more than one hour.   A

14

needle EMG measures the electrical activity of the muscle.   A typical needle EMG can take as long as 25 minutes to one hour.

| CPT | CPT DESCRIPTION |
|---|---|
| 95904 | Nerve conduction, amplitude and latency/velocity study, each nerve; sensory |
| 95903 | Nerve conduction, amplitude and latency/velocity study, each nerve; motor, with f-wave study |
| 95861 | Needle measurement and recording of electrical activity of muscles or arms or legs |
| 95864 | Needle measurement and recording of electrical activity of muscles in arms or legs |
| 95885 | Needle measurement and recording of electrical activity of muscles of arm or leg limited study |
| 95886 | Needle measurement and recording of electrical activity of muscles or arm or leg complete study |

l.    AWERBUCH used each of the above codes to bill Medicare and other insurers for nerve conduction studies and needle EMGs he purportedly performed.   The table below illustrates the billed and paid amounts from Medicare and Blue Cross Blue Shield of Michigan (BCBSM) to AWERBUCH as they relate to the procedure codes at issue in this matter:

| CPT | MEDICARE (Jan '09 – Jan '14) | | BCBSM (Jan ' 09 – Mar '14) | |
|---|---|---|---|---|
| | BILLED | PAID | BILLED | PAID |
| 95904 | $3,811,125.00 | $1,316,694.27 | $4,278,917.00 | $1,224,573.34 |
| 95903 | $2,071,479.00 | $ 932,612.73 | $2,904,213.00 | $1,072,798.40 |
| 95861 | $1,475,160.00 | $ 351,697.08 | $1,379,695.00 | $ 252,052.93 |
| 95864 | $ 535,120.00 | $ 139,851.19 | $ 560,630.00 | $ 126,585.19 |
| 95885 | $ 30,452.00 | $ 4,422.62 | $ 25,900.00 | $ 1,231.89 |
| 95886 | $ 949,136.40 | $ 209,117.43 | $ 579,250.00 | $ 34,916.30 |
| 95887 | $ 300.00 | $ 58.62 | $ 0.00 | $ 0.00 |
| | $8,872,772.40 | $2,954,453.94 | $9,728,605.00 | $2,712,158.05 |

m.  Information has revealed that AWERBUCH billed Medicare and Blue Cross Blue Shield of Michigan (BCBSM) for nerve conduction studies and electromyography tests which he did not actually provide.

n.  Information received over the course of the criminal investigation developed from undercover patient visits, beneficiary interviews, expert witness reviews and the total monies received from Medicare, indicates that AWERBUCH prescribed Subsys outside the scope of legitimate medical practice and for no legitimate medical purpose.

o.  Using a Medicare Part D Peer Comparison report ranking prescribers of Subsys shows that AWERBUCH is the number one prescriber both nationwide and in the State of Michigan.   AWERBUCH's

prescriptions for Subsys has cost the Medicare program almost $7 million during the time period of January 2009 to February 2014, with his closest competitor having only prescribed $1,615,254 of this medication for Medicare beneficiaries.

p.     AWERBUCH is also one of the leading billers of Medicare for needle EMGs and NCS nationwide.   A nationwide peer comparison shows that AWERBUCH has reaped more than $5.6 million for such testing since January 2009, including approximately $464,591 from Medicare since January 2012.

q.     AWERBUCH created a scheme of not actually performing electro diagnostic testing for which he billed Medicare and BCBSM. AWERBUCH billed for electro diagnostic tests on patients that were never actually performed. At least three of the patients that AWERBUCH billed bogus electro diagnostic tests for were undercover officers.   Each of the officers went into AWERBUCH's Saginaw office where AWERBUCH pretended to perform the diagnostic test on them by touching them with needles that were not hooked up to the EMG machine.   No printout came out of the machine and it appeared that the machine was not functional.   The undercover visits were

reviewed by a medical expert who determined that the diagnostic test was not real based upon the facts that no ground electrodes were placed on the patients, nor were tape measurements taken.   In addition, the tests only lasted on average about two minutes, whereas legitimate electro diagnostic tests should last a minimum of 25 minutes.

r.    Based on information obtained through investigation, a significant portion of AWERBUCH's business is derived from fraudulent or fictitious billing, which resulted in a great accumulation of wealth through this illegal activity.

## FINANCIAL INVESTIGATION

s.    AWERBUCH has engaged in a number of financial transactions with the proceeds of his fraudulent activity. Between January 2009 and January 2014, AWERBUCH received over $5.6 million for EMGs and NCS testing.   During this same time frame, AWERBUCH engaged in many financial transactions of over $10,000, from various business and personal bank accounts, as well as Merrill Lunch accounts held personally and in related business entities, often for the purchase of expensive, rare coins. Sizeable purchases were made with dealers of rare and collectible coins, as well as dealers of other types of collectible

items.   These assets were purchased, at least in part, with criminally

derived proceeds commingled in AWERBUCH's various accounts.

t.   When illegally obtained funds are commingled with legitimate funds in

a bank account for the purpose of concealing or disguising the location,

source, ownership, or control of the illegally obtained funds, all of the

funds in the commingled accounts are subject to seizure and forfeiture.

u.   Where commingling occurs, the Government need not separate out

tainted money from any potentially clean money that may be contained

in a bank account because all of the funds in the account constitute

proceeds of unlawful activity and/or property "involved in" unlawful

activity, or traceable thereto, and thus are subject to forfeiture.

v.   From January 2008 through December 2013, approximately

$11,017,880 in Medicare proceeds was deposited into AWERBUCH's

Fifth Third Bank Account XXXXXX7731.   AWERBUCH conducted

many purchases directly from this account, and also routinely

transferred funds from this account into other accounts for both

business and personal use.

w.   The chart below summarizes over $9 million dollars in payments made

from AWERBUCH's business and personal bank accounts, as well as

his Merrill Lynch accounts, to various coin and other collectible dealers

from 2008 through 2013:

| Payee | 2008 | 2009 | 2010 | 2011 | 2012 | 2013 | Total |
|---|---|---|---|---|---|---|---|
| Kagin's Inc | $ 801,736.70 | $ 471,193.95 | $1,602,778.00 | $1,418,849.63 | $1,947,318.75 | $777,000.00 | $7,018,877.03 |
| New World Rarities, Ltd | $ 115,000.00 | $ 189,100.00 | $ 95,380.00 | $ 126,700.00 | $ 132,435.00 | $ 15,000.00 | $ 673,615.00 |
| Pegasi | $ 66,012.50 | $ 168,008.25 | $ 64,827.75 | $ 103,956.75 | $ 76,142.00 | $ 59,250.00 | $ 538,197.25 |
| Frederick Bart | $ 205,200.00 | $ 120,025.00 | $ 35,000.00 | | | | $ 360,225.00 |
| Heritage Auction Galleries | | $ 11,402.20 | | $ 163,853.05 | $ 21,000.00 | | $ 196,255.25 |
| David Lawrence Rare Coins | | $ 123,500.00 | | | | | $ 123,500.00 |
| Dave Hirschman | $ 21,605.00 | $ 17,565.00 | $ 8,680.00 | $ 26,130.00 | $ 15,540.00 | $ 19,035.00 | $ 108,555.00 |
| William Rosenblum, LLC | $ 8,803.00 | | | $ 47,758.50 | $ 35,248.50 | | $ 91,810.00 |
| Honor Coin | | $ 60,250.00 | $ 13,950.00 | $ 10,730.00 | $ 4,550.00 | $ 2,200.00 | $ 91,680.00 |
| Coin Shop | $ 12,000.00 | $ 6,837.00 | $ 4,910.00 | | $ 7,600.00 | | $ 31,347.00 |
| Nouthens Numismatic | | $ 29,500.00 | | | | | $ 29,500.00 |
| HLRC | $ 20,500.00 | $ 7,850.00 | | | | | $ 28,350.00 |
| Stack's Numismatists | | $ 8,185.05 | | $ 14,595.55 | | | $ 22,780.60 |
| USMS Limited | | | $ 5,315.00 | $ 8,320.00 | | $ 700.00 | $ 14,335.00 |
| Mark Alberici | | | | $ 12,500.00 | | | $ 12,500.00 |
| Weiss Collectables | | $ 1,500.00 | $ 500.00 | | | | $ 2,000.00 |
| Total | $1,250,857.20 | $1,214,916.45 | $1,831,340.75 | $1,933,393.48 | $2,239,834.25 | $873,185.00 | $9,343,527.13 |

    x.    At least 192 of the above summarized transactions were in excess of

$10,000 each in violation of Title 18 U.S.C. 1957.

    y.    In addition to Fifth Third Bank Account XXXXXX7731,

AWERBUCH maintained other accounts at Fifth Third Bank.

AWERBUCH also held accounts at PNC Bank and as previously

mentioned, AWERBUCH held numerous accounts at Merrill Lynch.

Investigation revealed that each of the accounts received significant

amounts of illegally obtained proceeds from AWERBUCH's Fifth

Third Bank Account XXXXXX7731.

    z.    In April 2011, AWERBUCH's investment accounts held at Charles

Schwab and Morgan Stanley were rolled into accounts held at Merrill

Lynch.   Funds traced from Fifth Third Bank Account XXXXXX7731, show payments to Charles Schwab of at least $671,400 from May 2008 through January 2011.   An additional $94,000 was transferred from Fifth Third Bank Account XXXXXX7731, into Morgan Stanley Smith Barney between January 2008 and March 2011.

aa.  Also from September 2011 through November 2013, AWERBUCH made deposits and transfers to his Merrill Lynch accounts totaling at least $329,914.68.   AWERBUCH continued to close out accounts at Merrill Lynch by rolling the funds into new Merrill Lynch accounts.

bb.  In addition to fund transfers to investment firms from AWERBUCH's Fifth Third Bank Account XXXXXX7731, there were also transfers made from this account to other bank accounts.

cc.   Below is a chart with a sample of purchases made during 2013 from

AWERBUCH's various bank accounts:

| COINS/COLLECTIBLES PURCHASES - GREATER THAN $10,000 | | | | |
|---|---|---|---|---|
| CHECK # | DATE | PAYEE | AMOUNT | BANK |
| 1212 | 12/4/2013 | KAGIN'S INC. | $100,000.00 | 5/3 BANK |
| 5163 | 11/14/2013 | KAGIN'S INC. | $30,000.00 | 5/3 BANK |
| 1193 | 11/12/2013 | KAGIN'S INC. | $65,000.00 | 5/3 BANK |
| WT | 10/23/2013 | KAGIN'S INC. | $100,000.00 | 5/3 BANK |
| 28818 | 10/16/2013 | KAGIN'S INC. | $30,000.00 | 5/3 BANK |
| 1189 | 9/22/2013 | KAGIN'S INC. | $45,000.00 | 5/3 BANK |
| 1183 | 5/14/2013 | KAGIN'S INC. | $100,000.00 | 5/3 BANK |
| 1151 | 2/6/2013 | KAGIN'S INC. | $50,000.00 | 5/3 BANK |
| 5159 | 2/1/2013 | KAGIN'S INC. | $20,000.00 | 5/3 BANK |
| 1211 | 1/23/2013 | KAGIN'S INC. | $30,000.00 | 5/3 BANK |

dd.   From September 2011 through November 2013, AWERBUCH made

payments and transfers from his Fifth Third Bank Account No.

XXXXXX7731 to Merrill Lynch accounts totaling at least

$329,914.68.   It is believed that these payments and transfers were

proceeds of health care fraud, proceeds of distribution of controlled

substances, and/or proceeds or funds involved in money laundering.

The following dollar amounts were payments/transfers from Fifth

Third Bank Account No. XXXXXX7731 during the aforementioned

time period to:

Merrill Lynch Account No. XXX-X5623          $ 42,414.68

Merrill Lynch Account No. XXX-X5618          $250,000.00

Merrill Lynch Account No. XXX-X5635          $ 37,500.00

ee.   AWERBUCH routinely commingled funds among his various

accounts, including those which had received tainted funds.   Between

the approximate time period of November/December 2013,

AWERBUCH made transfers involving the following accounts owned

by him:

- From Merrill Lynch Account No. XXX-X5623 to Merrill Lynch Account No. XXX-X8161 approximately $145,000 in securities.

- From Merrill Lynch Account No. XXX-X5618 to Merrill Lynch Account No. XXX-X7984, approximately $1.1 Million Dollars in securities.

ff.   Not only did AWERBUCH use criminally-derived proceeds to

purchase luxury items such as rare coins, collectibles and automobiles,

AWERBUCH also used these illegally obtained proceeds to purchase

the real property located in Arizona, which is the subject of related civil

forfeiture action, U.S. vs. Real Property Located at 6320 East Red

Range Way, Cave Creek, Maricopa County, Arizona, et al., Civil Case No. 14-cv-12045 (Honorable Thomas L. Ludington). AWERBUCH transferred funds back and forth between various accounts commingling criminally-derived funds with other business funds in order to purchase the Defendant Real Property.

gg.   Based upon the information obtained through the course of investigation, the Defendant Property is subject to forfeiture for the reason that the Defendant Property is criminally derived proceeds of health care fraud and unlawful distribution of a controlled substance, and/or money laundering, and/or the Defendant Property constitutes property involved in or traceable to such offenses; and is, therefore, subject to forfeiture.

## CLAIMS FOR RELIEF

13.   Plaintiff re-alleges and incorporates by reference each and every allegation contained in Paragraphs 1 through 12 above, including any subparagraphs thereunder.

14.   There is evidence that the Defendant Property is traceable to proceeds derived from violations of federal drug statutes pursuant to 21 U.S.C. §§ 841 and 846, health care fraud pursuant to 18 U.S.C. §§ 1347 and 1349, and also constitutes

property involved in money laundering, in violation of 18 U.S.C. §§ 1956 and 1957, and therefore is subject to civil forfeiture pursuant to 18 U.S.C. §§ 981(a)(1)(A), 981(a)(1)(C), and 21 U.S.C. § 881(a)(6).

## CONCLUSION AND RELIEF

WHEREFORE, Plaintiff respectfully requests that a warrant for arrest of the defendants *in rem* be issued; that due notice be given to all interested parties to appear and show cause why forfeiture should not be decreed; that judgment be entered declaring the defendants *in rem* to be condemned and forfeited to the United States for disposition according to law; and that the United States be granted such other further relief as this Court may deem just and proper together with costs and disbursements of this action.

Respectfully submitted,

BARBARA L. McQUADE
United States Attorney

Dated: June 5, 2015

JONATHAN J.C. GREY
Assistant United States Attorney
211 W. Fort Street, Suite 2001
Detroit, Michigan   48226-3211
(313) 226-9116
(Illinois Bar No. 6292918)

25

## **VERIFICATION**

I, Frank Downey, state that I am a Special Agent with the United States Internal Revenue Service – Criminal Investigation (IRS-CI).   I have read the foregoing Complaint for Forfeiture and declare under penalty of perjury that the facts contained therein are true and correct based upon knowledge possessed by me and/or upon information received from other law enforcement agents.

Frank Downey, Special Agent
Internal Revenue Service – CI

Dated: June 5, 2015